WILLIAM H. IRWIN, PROSECUTOR, v. CITY OF ATLANTIC CITY, RESPONDENT.

Submitted December 7, 1916—Decided March 22, 1917.

1. The act of 1916 (*Pamph. L., p. 283*), requiring the owner of jitney busses to comply with certain legislative regulations, and to pay a specified tax into the treasury of the city in which they are operated, imposes a state-wide policy of regulation upon all subordinate governing bodies, in the use and regulation of such a method of transportation, but it contains nothing in its provisions to indicate that it was the legislative purpose to repeal the powers of regulation theretofore conceded to municipalities by their respective charters.

2. In the absence of an express intent to repeal, or of a legislative intent to deal *de novo* with the entire subject, evinced by the existence of incongruous enactments, demonstrating *ex necessitate* the legislative purpose to supersede existing legislation by the later law, a repeal by implication is not favored.

On *certiorari* removing for review an ordinance of Atlantic City.

Before Justices SWAYZE, MINTURN and KALISCH.

For the prosecutor, *Theodore W. Schimpf.*

For the respondent, *Harry Wootton.*

The opinion of the court was delivered by

MINTURN, J.   The facts agreed upon are as follows:

1. That Atlantic City is a municipal corporation.

2. That Atlantic City is governed under the provisions of an act entitled "An act for the government of cities." *Pamph. L.* 1902, *p.* 284.

3. That the city of Atlantic City is now governed by what is commonly known as the Commission Government act of 1911, and the several supplements and amendments thereto.

4. That the distance covered in the ordinance passed May 24th, 1916, approved September 2d, 1916, is as follows: "From Maine to Albany avenue, two and six-tenths miles; from Albany to Jackson avenue, seven-tenths of a mile; from Caspian avenue to the Boardwalk, nine-tenths of a mile; that the distance covered by the trolley company of Atlantic City from the Inlet to Jackson avenue is three and seven-tenths miles; from Jackson avenue to Savannah avenue, one and nine-tenths miles; that the single fare charged by the railroad company from the Inlet to Savannah avenue is five cents."

5. That Atlantic City is laid out with reference to its streets in the manner following: Abutting the ocean is a boardwalk, and running parallel with said boardwalk are the following main streets: Pacific avenue, Atlantic avenue, Arctic avenue, Baltic avenue and Mediterranean avenue. That Atlantic avenue is the main business street of Atlantic City, and on the said street are two sets of tracks which are used by the Atlantic City and Shore Railroad Company, in the operation of trolley cars on Atlantic avenue, for the

carrying of passengers; that Atlantic avenue is intersected by many cross streets from the Inlet to Jackson avenue; that said Atlantic avenue is intersected, among other streets, by Virginia avenue, South Carolina avenue and Florida avenue, on which streets are laid tracks on which trolley cars are operated, for the carrying of passengers, and is also intersected by Georgia avenue and Mississippi avenue, on which there are tracks which are used, chiefly in summer time, for the incoming and outgoing excursion trains, propelled by steam.

6. That the prosecutor is a resident of the city, and at the time of the granting of the writ was the owner and operator of a jitney bus, for hire, over the streets of the city.

The charter of the city (*Pamph. L.* 1902, *p.* 284) empowered the council to regulate the use of the city streets.

The act of 1916, page 283, requires the owner of an auto or jitney bus to comply with certain legislative regulations, and to pay a specified tax to the city treasury. This act has been held to be constitutional by this court. *West* v. *Asbury Park,* 89 *N. J. L.* 402.

On August 24th, 1916, the city adopted an ordinance providing additional regulations for the use and operation of such conveyances, and provided penalties for the violation of these regulations. The validity of this ordinance is the question controverted here; the insistence in effect being that the legislature by the act of 1916, having dealt with the subject-matter, and regulated it, from the viewpoint of state policy, it is *ultra vires* for the municipality to add other and further regulations in the interest and well-being of local government. The power of the city to regulate the use of its streets and generally to legislate, under its charter provisions, for the purposes in question here, anterior to the passage of the act of 1916, has been definitely settled by the adjudications. *Fonsler* v. *Atlantic City,* 70 *N. J. L.* 125; *Ferrelli* v. *Atlantic City,* *Id.* 489; *Brown* v. *Atlantic City,* 71 *Id.* 81; *Reed* v. *Saslaff,* 78 *Id.* 158; *Brown* v. *Atlantic City,* 72 *Id.* 207; *Harris* v. *Atlantic City,* 73 *Id.* 251; *Morwitz* v. *Atlantic City,* *Id.* 254.

These cases and others not necessary to cite, determined not only the legal right of the city to so legislate, but also emphasized the reasonableness of the provisions of the ordinances passed in pursuance of this general power.

The act of 1916, page 283, imposed a state-wide policy of regulation upon all subordinate governing bodies, in the use and regulation of this method of transportation, but it contains nothing in its provisions to indicate that it was the legislative purpose to repeal the powers of regulation theretofore conceded to municipalities by their respective charters. The requirements contained in the act of 1916 were manifestly superadded to the exercise of such powers, as the municipalities may legally exercise, for the best interests of reasonable local self government, in the management, control and regulation of municipal highways, and the safety and protection of the inhabitants thereon.

In the absence of an express intent to repeal, or of a legislative intent to deal *de novo* with the entire subject, evinced by the existence of incongruous enactments, demonstrating *ex necessitate* the legislative purpose to supersede existing legislation by the later law, a repeal by implication will not be favored. *State, Morris Railroad Co.,* v. *Commissioners,* 37 *N. J. L.* 228; *State* v. *Blake,* 35 *Id.* 208; *S. C.,* 36 *Id.* 442.

It was competent for the commissioners to impose reasonable conditions upon the exercise of the right conferred, if deemed expedient in the public interest.

Our consideration of the remaining reasons, presented by the prosecutor, leads us to conclude that they are without substance. The ordinance will be affirmed.